UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYNK MEDIA, LLC,

                                    Plaintiff,

          v.

PEACOCK TV LLC and NBCUNIVERSAL
MEDIA, LLC,

                                    Defendants.

Civil Action No.:  1:23-cv-05845-JGK

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendants
150 East 42nd Street
New York, New York 10017

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 3

    I.      Application of the Fair Use Doctrine is Ripe for Early Adjudication on these Facts .............................................................................................................. 3

    II.    Plaintiff's Copyright Claim Is Barred by the Fair Use Doctrine ........................... 4

        A.    First Factor – The Documentary is Transformative .................................... 4

        B.    Second Factor – The Nature of the Copyrighted Work is Factual ............. 7

        C.    Third Factor – The Documentary Uses a Reasonable Amount of the Work .................................................................................................... 8

        D.    Fourth Factor – The Documentary Does Not Affect the Market for Plaintiff's Work ....................................................................................... 9

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   143 S. Ct. 1258 (2023)................................................................................2, 4, 6, 8, 9

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   11 F.4th 26 (2d Cir. 2021) ...........................................................................4, 10

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015)..........................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)..........................................................................1

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..........................................................................7

*Bouchat v. Baltimore Ravens Ltd. P'ship*,
   737 F.3d 932 (4th Cir. 2013) ........................................................................1, 5, 10

*Brammer v. Violent Hues Prods., LLC*,
   922 F.3d 255 (4th Cir. 2019) ........................................................................1, 5

*Brody v. Fox Broad. Co., LLC*,
   2023 U.S. Dist. LEXIS 58362 (S.D.N.Y. Apr. 3, 2023).................................3, 7

*Brown v. Netflix*,
   855 Fed. Appx. 61 (2d Cir. 2021) .................................................................3, 6

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)......................................................................................4, 5, 7, 8

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)..........................................................................5, 6

*Cramer v. Netflix, Inc.*,
   22-cv-131, 2023 WL 6130030, 2023 U.S. Dist. Lexis 165510 (W.D. Pa. Sept.
   18, 2023) .......................................................................................................2, 3

*Grant v. Trump*,
   563 F. Supp. 3d 278 (2021) ..........................................................................8, 10

*Hachette Book Grp., Inc. v. Internet Archive*,
   2023 U.S. Dist. LEXIS 50749 (S.D.N.Y Mar. 24, 2023) ..............................10

*Hofheinz v. Discovery Commc'ns, Inc.*,
    2001 U.S. Dist. LEXIS 14752 (S.D.N.Y. 2001) ........................................................4

*Núñez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000) ........................................................................................1

*Stewart v. Abend*,
    495 U. S. 207, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990) ....................................5

*Taje Monbo & Deafueh Monbo v. Lotfy Nathan, Red Gap Film Grp., LLC*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ......................................................................6

*Walsh v. Townsquare Media, Inc.*,
    464 F. Supp. 3d 570 (S.D.N.Y. 2020)......................................................................5

**Statutes**

17 U.S.C. § 107 ..............................................................................................3, 4, 7, 8, 9

**Other Authorities**

Karen Shatzkin & Dale Cohen,
    *Picture This: Applying the Fair Use Doctrine to Documentary Films After*
    Google/Oracle *and* Warhol, 30 UCLA Ent. L. Rev. 1, 45 (2023) ...........................2

Defendants respectfully submit this Reply Memorandum of Law in response to Plaintiff's

Memorandum of Law in Opposition (Dkt. No. 24) (the "Opposition").

## PRELIMINARY STATEMENT

It is difficult to imagine a more appropriate and clear-cut application of the fair use doctrine

than the one presented here, i.e. where brief excerpts of "copyrighted works serve documentary

purposes and [are] important to the accurate representations of historical events." *Brammer v.*

*Violent Hues Prods., LLC*, 922 F.3d 255, 264 (4th Cir. 2019). As explained in Defendants' opening

brief, the Documentary adds new "scholarly, biographical, or journalistic value" and is

"accompanied by commentary" that illuminates the dry historical events captured in Plaintiff's

original videos. *Id.* (citing *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609

(2d Cir. 2006); *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000)). Were courts

"to require those wishing to produce films and documentaries to receive permission from copyright

holders for fleeting factual uses of their works, [the court] would allow those copyright holders to

exert enormous influence over new depictions of historical subjects and events." *Bouchat v.*

*Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 944 (4th Cir. 2013). This cannot be the law.

Against that backdrop, Plaintiff crafts its Opposition almost entirely on the faulty premise

that the Documentary uses the videos-in-suit "for the same purpose as they were intended to be

used" by Plaintiff. *See* Opp. at 12.[1] Specifically, Plaintiff claims that the Documentary's purpose

in using the clips was "to document the events occurring at the election fraud rally chaired by Rudy

Giuliani at the Four Seasons Landscaping Company." *Id.* But this is not so.

While the Documentary necessarily shows images of the events that occurred that day, as

interview subjects talk about how they experienced those events, the use is ***not*** intended to depict

---

[1] Citations to "Opp." refer to Plaintiff's Memorandum of Law in Opposition, dated November 6, 2023 (Dkt. No. 24).

the events in the same manner as the videos themselves. Rather, the Documentary's use comments on those images (and the events depicted) and utilizes them to show how its subjects experienced the events they describe. The Documentary examines the events through the lens of a small business owner, adding original commentary and insight regarding the greater picture of the country's cultural moment and the resulting public backlash that the Documentary's subjects received and overcame. Such use is the very definition of "transformative."

Apparently sensing the inherent weakness of its arguments, the Opposition pivots to a repeated misreading of *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023) ("*Warhol*") in an attempt to distract from the straightforward application of the fair use factors. But *Warhol* did not purport to rewrite fair-use law or render decades of caselaw irrelevant. For example, Plaintiff argues that *Warhol* "calls into question whether there are any instances in which a District Court could properly consider a fair use defense at the motion to dismiss stage." Opp. at 1. The Supreme Court's ruling does no such thing. Post-*Warhol* courts continue to grant dismissal on the pleadings in reliance on the fair use doctrine, and those courts still balance the statutory factors as they had traditionally done prior to *Warhol*. *See e.g. Cramer v. Netflix, Inc.*, 22-cv-131, 2023 WL 6130030, 2023 U.S. Dist. Lexis 165510 (W.D. Pa. Sept. 18, 2023); *see also* Karen Shatzkin & Dale Cohen, *Picture This: Applying the Fair Use Doctrine to Documentary Films After Google/Oracle and Warhol*, 30 UCLA Ent. L. Rev. 1, 45 (2023) ("[T]here is little reason to believe that the statutory four-factor analysis in documentary fair-use cases will change in light of *Warhol*'s narrowly focused holding on the commercial licensing of Warhol's Prince series.").

Plaintiff's effort to twist *Warhol* is also wrong on the substance—particularly on the issue of commerciality. In *Warhol*, both plaintiff's and defendant's portraits of the recording artist Prince

shared the same purpose of being licensed to magazines. In a *Warhol*-like situation, a prospective licensee could approach either party for a portrait of Prince, and both works could be sold in the same market as substitutes for each other. Here, it is evident that the purposes of the videos-in-suit and the Documentary are not the same and the works are not substitutable. Therefore, the *Warhol* decision is entirely inapposite on the facts. As a result, the Opposition offers nothing to rebut the fair use analysis in Defendants' opening brief and the Complaint should be dismissed in its entirety.

**ARGUMENT**

**I.      Application of the Fair Use Doctrine is Ripe for Early Adjudication on these Facts**

The Opposition repeatedly mischaracterizes the Documentary as "unlawful" and "theft." Opp. at 1, 2, 9, 11. Plaintiff's inflammatory word choice suggests a fundamental misunderstanding of the principle that, by definition, "fair use of a copyrighted work…is not an infringement of copyright." *See* 17 U.S.C. § 107. Under the fair use exception, Defendants' conduct is not unauthorized copying and Plaintiff's claim fails.

To avoid this result, Plaintiff argues that fair use should not be determined on a motion to dismiss. However, courts routinely apply fair use at the pleading stage where, as here, the Court can conduct a side-by-side comparison of the works. *See Cramer v. Netflix, Inc.*, 2023 U.S. Dist. Lexis 165510; *Brody v. Fox Broad. Co., LLC*, 2023 U.S. Dist. LEXIS 58362 (S.D.N.Y. Apr. 3, 2023); *Brown v. Netflix*, 855 Fed. Appx. 61, 62-63 (2d Cir. 2021).

*Warhol*, which did not involve a pre-answer motion, did not change this. Post-*Warhol*, courts still hold that where "[t]he record before the Court" includes all of the works at issue, the court is able to "to conduct its fair use analysis" and "enter judgment in favor of Defendants as a matter of law." *Cramer*, 2023 U.S. Dist. Lexis 165510, at *30. Here, the operative Complaint includes a full copy of the Documentary, as well as copies of the videos-in-suit. The Court need

only conduct a side-by-side comparison of the works to ascertain Defendants' transformative, secondary purpose.

## II.   Plaintiff's Copyright Claim Is Barred by the Fair Use Doctrine

Plaintiff's Opposition fails to meaningfully rebut Defendants' prior fair use analysis.

### A.   *First Factor – The Documentary is Transformative.*

The first factor considers the "purpose and character" of the reproduced work or the "secondary use." 17 U.S.C. § 107(1). In their opening brief, Defendants note that "[d]ocumentaries and biographies fall within the protected categories of § 107 and are entitled to the presumption that the use of the copyrighted material is fair." *Hofheinz v. Discovery Commc'ns, Inc.*, 2001 U.S. Dist. LEXIS 14752, at *11 (S.D.N.Y. 2001). Plaintiff characterizes this principle as "short-sighted" considering the Supreme Court's recent decision in *Warhol*. Opp. at 10. The Opposition misreads, misunderstands, or simply ignores the teachings of *Warhol*.

*Warhol* explicitly states that the purposes listed in § 107 reflect "'the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses,' and so may guide the first factor inquiry." *Warhol*, 143 S. Ct. 1258, 1274 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994)). The examples of purposes listed in § 107, such as for criticism, comment, and news reporting, "are easily understood" as fair use as they "contemplate the use of an original work to 'serv[e] a manifestly different purpose from the [work] itself." *Id.* at 1275 (quoting *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021)). Accordingly, nothing in the *Warhol* decision alters the long-held understanding that documentaries fall within the protected categories of § 107 and are entitled to a presumption of fair use.

*Warhol* also expressly holds that "a use may be justified because copying is reasonably necessary to achieve the user's new purpose." *Warhol*, 143 S. Ct. at 1276. The central question

that the first factor considers is "whether the new work merely 'supersede[s] the objects' of the original creation ('supplanting' the original), or instead adds something new, with a further purpose or different character." *Id*. at 1274 (quoting *Campbell*, 510 U.S. at 579).

Here, the purpose of the Documentary was not to merely depict the Rudy Giuliani press conference and the chaos surrounding it, but rather to provide commentary on those events and show viewers how its subjects experienced them. As the Fourth Circuit recognizes, the application of fair use is particularly important when, as here, "copyrighted works serve documentary purposes and [are] important to the accurate representations of historical events." *Brammer*, 922 F.3d at 264. If Plaintiff's arguments are accepted to restrict such transformative use, it would enable "copyright holders to exert enormous influence over new depictions of historical subjects and events." *Bouchat*, 737 F.3d at 944. Such a result is anathema to the purposes of the Copyright Act, which "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart v. Abend*, 495 U. S. 207, 236, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990) (internal quotation marks omitted).

Plaintiff's emphasis on *Warhol's* discussion of commerciality is also misplaced. The fact that the Documentary was produced for profit does not weigh against a finding of fair use here. In fact, "[m]any of the most universally accepted forms of fair use, such as news reporting and commentary… are all normally done commercially for profit." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 39-40 (2d Cir. 2015). "[A]s the Supreme Court has recognized, Congress 'could not have intended' a rule that commercial uses are presumptively unfair." *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013) (citing *Campbell*, 510 U.S. at 584). Thus, where a defendant's use is transformative, it is well-established that the fact that "a defendant's use of copyrighted material is for profit bears less weight." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 585

(S.D.N.Y. 2020) (quoting *Cariou*, 714 F.3d at 708) (holding that "regardless of whether Defendant profits from pageviews of the Article, its use of the Photograph is transformative, outweighing the commercial nature of the use" and granting motion to dismiss); *see also Brown*, 462 F. Supp. 3d at 461 (rejecting argument that for-profit nature of documentary undermined fair-use defense); *Taje Monbo & Deafueh Monbo v. Lotfy Nathan, Red Gap Film Grp., LLC*, 623 F. Supp. 3d 56, 101 (E.D.N.Y. 2022) ("Considering the transformative nature of the use of Plaintiffs' work in the 2013 Documentary together with the commercial purpose of the 2013 Documentary, the first factor favors a finding of fair use.").

*Warhol* did not change this, either. The *Warhol* Court only dealt with how these principles applied to the defendant's "commercial licensing" of Warhol's Prince portrait—something not at issue in this case. *Warhol*, 143 S.Ct. at 1278. *Warhol* "expresse[d] no opinion as to the creation, display, or sale of any of the original Prince Series works." *Id.*

Far from rewriting the law, *Warhol* simply clarified that a transformative use analysis should consider whether "an original work and copying use share the same or highly similar purposes, or where wide dissemination of a secondary work would otherwise run the risk of substitution for the original or licensed derivatives of it." *Id*. at 1277. An application of this narrow principle decisively favors a finding of fair use on the current facts.

It is readily apparent that the works-in-suit are not interchangeable and the Documentary cannot supplant Plaintiff's videos. The two works are not substitutable like *Warhol's* Prince portraits; no one would license the Documentary ***instead of*** the videos, or vice versa. A prospective licensee would still need to license Plaintiff's videos for a depiction of the Giuliani press conference and the disorderly crowd outside it, not only because the Documentary uses so little of the videos, but also because the Documentary does not include many of their key occurrences. The

vast majority of the videos-in-suit where Giuliani (and others) speak at the podium to support their claims of election fraud is completely unused in the Documentary.

The Documentary is unquestionably a transformative use of Plaintiff's factual footage, weaving Plaintiff's recordings into a larger creative narrative and encasing Plaintiff's footage with original, newsworthy commentary directly related to the material in Plaintiff's footage, in many cases in the form of reactions to the political events the subjects witnessed firsthand. Such transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright" and the more transformative the new work, the less the significance of other factors like commercialism. *Campbell*, 510 U.S. at 579.

On these facts, the Documentary's use is fair as a matter of law. *See Brody*, 2023 U.S. Dist. LEXIS 58362, at *5 (holding that defendants' use was transformative on the pleadings because it was "reporting on a newsworthy subject" while "adding commentary").

### B. *Second Factor – The Nature of the Copyrighted Work is Factual.*

The second factor considers the "nature of the copyrighted work." 17 U.S.C. § 107(2). The analysis turns on whether the work is expressive and creative, or more factual, with greater leeway for a claim of fair use when the work is informational. *Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006). Here, the videos-in-suit are factual in nature, documenting occurrences of an extremely newsworthy political press conference during a very contentious presidential election. The videos-in-suit provide nothing more than a record of the speech and occurrences at an event of public interest. The Opposition does not dispute that the videos-in-suit are purely factual, not creative.

Instead, the Opposition argues that "*Warhol IV* holds that a determination of the first fair use factor will necessarily affect the resolution of the remaining fair use factors." Opp. at 16. Plaintiff's contention that *Warhol* somehow obliterates the other factors in favor of the first, or

stands for the proposition that the other factors should be weighed differently than they traditionally have, finds no support in the Supreme Court's decision.

On the contrary, in *Warhol*, "the sole question presented [was] whether the first fair use factor…weighs in favor of AWF's recent commercial licensing..." *Warhol*, 143 S. Ct. at 1266. The Supreme Court also reiterated "that the four statutory fair use factors may not 'be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Id.* at 1287 (quoting *Campbell*, 510 U.S. at 578). Accordingly, the second factor still must be balanced, and it tips decisively in favor of a fair use finding.

### C. *Third Factor – The Documentary Uses a Reasonable Amount of the Work.*

Under the third fair use factor, courts consider the amount and substantiality of the portion used in relation to the copyrighted work as a whole. 17 U.S.C § 107(3). The ultimate question is whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying. *Grant v. Trump*, 563 F. Supp. 3d 278, 288 (2021) (Koeltl, J.) (citing *Campbell*, 510 U.S. at 586). The Opposition fails to make any compelling arguments rebutting Defendants' prior analysis of this factor.

First, Plaintiff again severely mischaracterizes *Warhol* by stating that "the third factor is similarly diminished" and "requires the Court to analyze the third fair use factor through the prism of the first." Opp. at 17. As discussed above, Plaintiff's misreading of *Warhol* is invented out of whole cloth and finds no support in the actual text of the *Warhol* decision.

Second, the Opposition deceptively attempts to increase the amount of the original work used in the Documentary, doubling the use to two minutes on the grounds that the Documentary was published in two separate locations. *See* Dkt. No. 19-3 (Cmpl., Ex. 3); *see also* Opp. at 18. In reality, only one minute is used within the 29-minute Documentary.

Third, Plaintiff argues that qualitatively the Documentary used more of Plaintiff's videos than necessary. *See* Opp. at 18. Specifically, Plaintiff argues that Defendants reproduced the videos unaltered, copying a substantial portion of the videos verbatim. Opp. at 19. But that is simply not the case. Defendants used snippets no longer than 7 seconds (with most uses being only 2-4 seconds, usually without sound) from videos that were more than five minutes long. *See* Dkt. No. 19-3 (Cmpl., Ex. 3). Such *de minimis* use cannot be considered a substantial portion.

Moreover, the portions used were reasonable in light of the inclusion of extensive original commentary, which both precedes and follows every disputed use. Rather than focusing only on the interview subjects' faces, the Documentary accompanies its interviews with footage of the events that the subjects describe—allowing viewers to understand what the subjects saw and experienced at the time. The Documentary uses no more of the work than necessary to achieve its transformative purpose.

Finally, Plaintiff also describes the use of the videos as "unnecessary to their purpose of creating the Documentary." Opp. at. 19. The Opposition suggests that "the owners of the Four Seasons Total Landscaping company could have described the pushback they claim to have endured from the community and the chaos of that day without visual aid." *Id.* This argument simply ignores that the purpose of the Copyright Act is to promote creativity, and that the fair use doctrine promotes the "balancing act between creativity and availability (including for use in new works)." *Warhol*, 143 S. Ct. at 1273. Therefore, the third factor also favors a fair use finding.

### D.   *Fourth Factor – The Documentary Does Not Affect the Market for Plaintiff's Work.*

The final factor considers "the effect of [the secondary] use upon the potential market for or value of the copyrighted work." 17 U.S.C § 107(4). This factor looks not at the damage the second work would cause on the market for the first work but rather whether it usurps the market

by offering a competing substitute. *Grant*, 563 F. Supp. 3d at 288 (Koeltl, J.). "An accused infringer usurps an existing market 'where the infringer's target audience and the nature of the infringing content is the same as the original.'" *Hachette Book Grp., Inc. v. Internet Archive*, 2023 U.S. Dist. LEXIS 50749, at *40 (S.D.N.Y Mar. 24, 2023) (Koeltl, J.) (citation omitted).

Defendants have shown that the two works do not serve the same purpose, and therefore the Documentary could not usurp the market by offering a competing substitute. Unlike the works in *Warhol*, Plaintiff's original videos and the Documentary are not interchangeable. For example, a prospective licensee cannot license the Documentary to depict the Giuliani press conference because the bulk of the content of the press conference is not included in the Documentary. The Documentary also has a much broader focus than the videos-in-suit, primarily examining the Documentary's subjects and how the events surrounding the Giuliani press conference affected them. Accordingly, the Documentary does not usurp the market for the original work.

In its Opposition, Plaintiff argues that "[a]nalysis of this factor requires the court to 'balance the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." Opp. at 19 (quoting *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 48 (2d Cir. 2021)). Under that rubric, a finding of fair use is even more appropriate. To deny fair use would enable Plaintiff to restrict "new depictions of historical subjects and events," and limit commentary and discussion of those events. *Bouchat*, 737 F.3d at 944. Meanwhile, a finding a fair use would have no adverse impact on the market for Plaintiff's videos. Accordingly, the fourth factor also weighs heavily in favor of fair use.

In light of the foregoing, Defendants request that the Court grant its Motion to Dismiss, dismiss the Amended Complaint in its entirety with prejudice, and grant any other and further relief that the Court deems just and proper.

Dated: New York, New York
      November 17, 2023

                    Yours, etc.

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

          By: _____

               Stephen J. Barrett
               150 East 42nd Street
               New York, New York 10017-5639
               (212) 490-3000
               Stephen.Barrett@wilsonelser.com
               Jura.Zibas@wilsonelser.com
               File No.: 13463.00240

               *Attorneys for Defendants*