UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

LYNK MEDIA, LLC,

                            Plaintiff,          23-cv-5845 (JGK)

          - against -            <u>MEMORANDUM OPINION</u>
                                                      <u>AND ORDER</u>
PEACOCK TV LLC and NBCUNIVERSAL
MEDIA, LLC,

                          Defendants.
————————————————————————

**JOHN G. KOELTL, District Judge:**

The plaintiff, Lynk Media, LLC, asserts a claim for copyright infringement against the defendants, Peacock TV LLC ("Peacock") and NBCUniversal Media, LLC ("NBC"), for the unauthorized use of two videos owned by the plaintiff. Am. Compl. ¶¶ 1-5, ECF No. 19. The defendants now move to dismiss the plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 21.

## I.

The following facts are taken from the amended complaint and are accepted as true for the purposes of deciding this motion.

The plaintiff owns the rights to two videos that are at issue in this case. The first video depicts a press conference about voter fraud given by Rudy Giuliani at the Four Seasons Total Landscaping Company in Philadelphia on November 7, 2020.

Am. Compl. ¶ 14. The second video depicts confrontations between supporters of Joe Biden and supporters of Donald Trump. Id. ¶ 21.

The videographer for the first video assigned the rights to Freedomnews.tv ("FNTV"), which in turn registered the first video with the United States Copyright Office ("USCO") on May 4, 2022, under Registration No. PA 2-354-255. Id. ¶¶ 14, 17-18. Similarly, the videographer for the second video assigned her rights to FNTV, which then registered the second video with the USCO on April 19, 2022, under Registration No. PA 2-354-298. Id. ¶¶ 21, 24-25. On June 6, 2023, FNTV assigned all of its rights, title, and interest to the two videos to the plaintiff. Id. ¶ 28.

Defendants Peacock and NBC subsequently made a documentary about the Giuliani press conference and its effects on the Four Seasons Total Landscaping Company using segments of the plaintiff's videos. Id. ¶¶ 40-41, 45, 46-49, 53-55. This documentary aired on Peacock on November 7, 2021. Id. ¶ 40. At about the same time, NBC aired a program that incorporated parts of the Peacock documentary and discussed the making of that documentary. Id. ¶ 48.

## II.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the

complaint as true and draw all reasonable inferences in the
plaintiff's favor.[1] McCarthy v. Dun & Bradstreet Corp., 482 F.3d
184, 191 (2d Cir. 2007). The Court's function on a motion to
dismiss is "not to weigh the evidence that might be presented at
a trial but merely to determine whether the complaint itself is
legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d
Cir. 1985).

The Court should not dismiss the complaint if the
plaintiff's complaint includes "enough facts to state a claim to
relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe
the factual allegations in the light most favorable to the
plaintiff, the Court does not need to "accept as true" the
plaintiff's legal conclusions. Id.

When presented with a motion to dismiss, the Court may
consider documents attached to or referenced in the complaint,
documents that the plaintiff either possessed or knew about and
relied on in bringing the lawsuit, or matters of which judicial

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal
alterations, citations, footnotes, and quotation marks in quoted text.

notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

The defendants argue that their use of the plaintiff's video clips constitutes fair use. See Defs.' Mem. at 10, ECF No. 22. Under the Copyright Act of 1976, fair use is a complete defense to a claim of copyright infringement. See 17 U.S.C. § 107. In applying the fair use doctrine, courts seek:

> to strike a balance between an artist's intellectual property rights to the fruits of her own creative labor, including the right to license and develop (or refrain from licensing or developing) derivative works based on that creative labor, and the ability of other authors, artists, and the rest of us to express them- or ourselves by reference to the works of others.

Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 36 (2d. Cir. 2021) (quoting Blanch v. Koons, 467 F.3d 244, 250 (2d Cir. 2006)), aff'd sub nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 598 U.S. 508 (2023).

The Copyright Act provides a non-exhaustive list of four factors that courts are to consider in making a fair use determination:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "[F]air use presents a holistic, context-sensitive inquiry not to be simplified with bright-line rules. All four statutory factors are to be explored, and the results weighed together, in light of the purposes of copyright." Warhol Found., 11 F.4th at 37 (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78 (1994)).

    Fair use involves a mixed question of law and fact, and because fair use is an affirmative defense, the defendants bear the ultimate burden of proving that the fair use factors balance in their favor. See id. at 36, 49. Fair use is also a fact-intensive inquiry. As a result, it rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage. See Graham v. Prince, 265 F. Supp. 3d 366, 377, 379 (S.D.N.Y. 2017) ("[I]t is conceivable—albeit highly unlikely—that a fair use affirmative defense can be addressed on a motion to dismiss[.]" (citing TCA Television Corp. v. McCollum, 839 F.3d 168, 178 (2d Cir. 2016))). The Court therefore "reviews defendants' allegedly infringing uses . . . by considering the four fair use factors in light of the factual allegations of the [Amended] Complaint and its exhibits." Id. at 379.

**A.**

The first fair use factor addresses "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes[.]" 17 U.S.C. § 107(1). This factor asks if the new work is transformative, "add[ing] something new," or if it "merely supersedes the objects of the original creation . . . ." Warhol Found., 598 U.S. at 527-28. "Although transformative use is not absolutely necessary for a finding of fair use, transformative works lie at the heart of the fair use doctrine, and a use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed fair use." Fox News Network, LLC v. TVEyes, Inc., 883 F.3d 169, 176-77 (2d Cir. 2018).

A secondary work's transformative nature "is a matter of degree," which "must be weighed against other considerations, like commercialism." Warhol Found., 598 U.S. at 525. A work's "commercialism weighs against a finding of fair use." Ferdman v. CBS Interactive Inc., 342 F. Supp. 3d 515, 531 (S.D.N.Y. 2018).

As a threshold matter, the defendants argue that, because they used the plaintiff's videos in a "documentary," the defendants' use "fall[s] within the protected categories of section 107 and [is] entitled to the presumption that the use of the copyrighted material is fair." Defs.' Mem. at 10. The defendants wield the term "documentary" as though it were a

talisman that forgives all copying. However, this is not a case where the documentary "provide[d] commentary about" the videos in question. Ferdman, 342 F. Supp. 3d at 534; see also Barcroft Media, Ltd. v. Coed Media Grp., LLC, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (noting that commentary constitutes a transformative use only where that commentary is "about that work"). Rather, the documentary used the plaintiff's videos as illustrative aids as they "profile[d] a small business owner and . . . explore[d] the manner in which a political event unexpectedly almost caused her business to fail." Defs.' Mem. at 13. Defendants lose the presumption of transformative use usually afforded to commentary or news stories where, as here, "the use is merely to provide an illustrative aid depicting a person or event described in the [work]." Whiddon v. Buzzfeed, Inc., 638 F. Supp. 3d 342, 351 (S.D.N.Y. 2022).

The defendants could have substituted videos taken by others at the news conference. Copying the plaintiff's videos was therefore not "reasonably necessary to achieve [the defendants'] new purpose." Warhol Found., 598 U.S. at 511. They simply used the plaintiff's videos without paying for their use to illustrate the subject matter of the documentaries. If this were permitted, it would undercut the market for news photographers and videographers. See Barcroft, 297 F. Supp. 3d at 352 ("[The defendant's] argument, if accepted, would

eliminate copyright protection any time a copyrighted [work] was used in conjunction with a news story about the subject of that [work]. That is plainly not the law.").

Second, the defendants argue that the commercial nature of their videos should not weigh against a finding of fair use because "many of the most universally accepted forms of fair use . . . are all normally done commercially for profit." Defs.' Reply at 5, ECF No. 25 (quoting Authors Guild v. Google, Inc., 804 F.3d 202, 219 (2d Cir. 2015)). They further argue that for-profit use "bears less weight" when "a defendant's use is transformative[.]" Id. (citing Walsh v. Townsquare Media, Inc., 464 F. Supp. 3d 570, 585 (S.D.N.Y. 2020)). But the defendants have not shown that their use is transformative. They seemingly used portions of the plaintiff's videos in the defendants' programs without changing those portions. In any event, "[t]he commercial nature of the use is not dispositive." Warhol Found., 598 U.S. at 531.

In summary, several questions of fact remain about the purpose behind the defendants' use of the plaintiff's videos and the norms of video copying within the news industry. The defendants have therefore failed to show that their use is transformative, and the first fair use factor does not weigh in their favor.

**B.**

The second fair use factor does not "help much in separating the fair use sheep from the infringing goats," as is typical in cases involving allegedly transformative copying. Campbell, 510 U.S. at 586; see also Authors Guild, 804 F.3d at 220 ("The second factor has rarely played a significant role in the determination of a fair use dispute."). This factor directs courts to consider "the nature of the copyrighted work, including (1) whether it is expressive or creative or more factual, with greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) where the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." Warhol Found., 11 F.4th at 45 (quoting Blanch, 467 F.3d at 256).

In this case, these sub-factors point in opposing directions. The first cuts in favor of the plaintiff. The videographers' clips "reflect[] [their] artistic choices of camera angle, exposure settings, and video length," suggesting that these works have at least some creative ingredients. See Nicklen v. Sinclair Broad. Grp., 551 F. Supp. 3d 188, 197 (S.D.N.Y. 2021); see also Am. Compl. ¶¶ 15-16, 22-23. The second sub-factor cuts in the other direction. The videos "purport[] to depict reality and [were] made publicly available before the challenged use." Nicklen, 551 F. Supp. 3d at 197; see also Am.

9

Compl. ¶¶ 19-20, 26-27. On balance, it is therefore unclear whether the works were "created for news gathering or other non-artistic purposes[,]" or whether they were created for other expressive aims." N. Jersey Media Grp. Inc. v. Pirro, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015). The second fair use factor therefore favors neither the plaintiff nor the defendants.

### c.

The third fair use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole[.]" 17 U.S.C. § 107(3). "In assessing this factor, [the court] consider[s] not only the quantity of the materials used but also their quality and importance in relation to the original work." Warhol Found., 11 F.4th at 45-46.

The defendants argue that their use of the plaintiff's videos was "exceedingly narrow;" the defendants used one minute of the combined 11-minute length of the plaintiff's two videos in the defendants' 29-minute documentary. Defs.' Mem. at 2. The defendants further argue that the documentary uses only as much of the plaintiff's footage as is necessary to depict the "events that the subjects describe—allowing viewers to understand what the subjects saw and experienced at the time." Id. at 4. But here, the defendants again fail to explain why they had to use the plaintiff's videos to illustrate the event in their

10

documentary. As discussed above regarding the first factor, the defendants could have used videos taken by others at the news conference. Instead, they copied "the heart" of the plaintiff's videos: the scenes of the news conference, and of clashes between supporters for Joe Biden and supporters for Donald Trump. See NXIVM Corp. v. Ross Inst., 364 F.3d 471, 480 (2d Cir. 2004). Because there is no apparent justification for this copying, the third factor favors the plaintiffs. See TCA Television, 839 F.3d at 185 ("Even a substantial taking . . . can constitute fair use if justified . . . [b]ut . . . defendants offer no persuasive justification for their extensive use of [the plaintiff's work].").

### D.

The fourth and final fair use factor asks "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." Warhol Found., 11 F.4th at 48. This factor also instructs the court to consider whether "unrestricted and widespread conduct of the sort engaged in by [the defendants] would result in a substantially adverse impact on the potential market" for the plaintiff's videos. Id. at 49.

The defendants correctly note that this factor asks not whether the second work would damage the market for the first, but whether the second work would usurp the market for

11

the first by offering a competing substitute. See Defs.' Mem. at
15 (citing Grant v. Trump, 563 F. Supp. 3d 278, 288 (S.D.N.Y.
2021)). The defendants are also correct that the documentary
will not serve as a satisfactory substitute for the videos
themselves. Id. at 16. Critically, however, the fourth fair use
factor considers "both the primary market for the work and any
derivative markets that exist or that its author might
reasonably license others to develop, regardless of whether the
particular author claiming infringement has elected to develop
such markets." Warhol Found., 11 F.4th at 48 (citing Salinger v.
Colting, 607 F.3d 68, 74, 83 (2d Cir. 2010)).

While the defendants assert that "a finding of fair use
would have no adverse impact on the market" for the plaintiff's
videos, Defs.' Reply at 10, they ignore that their use of the
plaintiff's videos would threaten the plaintiff's licensing
markets. The issue is whether "unrestricted and widespread
conduct of the sort engaged in by [the defendants] would result
in a substantially adverse impact on the potential [licensing]
market." Warhol Found., 11 F.4th at 48 (quoting Campbell, 510
U.S. at 590). In this case, "widespread, uncompensated use" of
the plaintiff's videos "would embolden would-be infringers and
undermine [the plaintiff's] ability to obtain compensation in
exchange for licensing" them. Grant, 563 F. Supp. 3d at 289; see
also Campbell, 510 U.S. at 593 (noting that evidence of

"substantial harm" to a licensing market "would weigh against a finding of fair use, because the licensing of derivatives is an important economic incentive to the creation of originals"). The defendants have not met their burden of demonstrating that their use would not harm the plaintiff in the licensing market. <u>Warhol Found.</u>, 11 F.4th at 49.

The Court, having considered the foregoing fair use factors, finds that the defendants have failed to "clearly establish[]" that, on its face, the Amended Complaint entitles them to a fair use defense against the plaintiff's copyright infringement claims. <u>TCA Television</u>, 839 F.3d at 178. It is therefore inappropriate to grant the defendants' 12(b)(6) motion to dismiss for failure to state a claim. The defendants may reassert their fair use defense at the summary judgment stage when there is a more developed factual record.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion to dismiss the Amended Complaint is **denied**. The Clerk is directed to close ECF No. 21.

**SO ORDERED.**

Dated:     New York, New York
           May 8, 2024

_____
John G. Koeltl
United States District Judge

13